# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | | |
| **v.** | ) | **Case No.** | **07-CR-135-CVE** |
| | ) | | |
| **LARRY WAYNE BARNES, SR.,** | ) | | |
| **and** | ) | | |
| **LARITA ANNETTE BARNES, aka** | ) | | |
| **"Larita Annette Clark",** | ) | | |
| | ) | | |
| **Defendants.** | ) | | |

## TRIAL BRIEF OF THE UNITED STATES OF AMERICA

The United States of America, by David E. O'Meilia, United States Attorney for the

Northern District of Oklahoma, and Robert T. Raley, Assistant United States Attorney for

the Northern District of Oklahoma, respectfully submits its brief for trial in the above-styled

case.

## I.

## STATUS OF THE CASE

**A.** Jury trial is set for April 21, 2008, at 9:30 a.m. before the Honorable Claire V.

Eagan, Chief Judge.

**B.** Estimated time for trial is 2 to 3 days.

**C.**   Defendant Larry Wayne Barnes, Sr. is on pretrial release and defendant Larita Annette Barnes is currently enrolled in the Choice Point Rehabilitation Facility.

**D.**   Trial by jury has not been waived.

**E.**   An interpreter will not be required.

**F.**   The Government expects to call approximately 8-13 witnesses, depending on trial stipulations.

## II.

## THE CHARGE IN THE INDICTMENT

**A.**   **Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(viii)**

**Possession with Intent to Distribute and Distribution of 50 Grams or More of Methamphetamine**

The essential elements of § 841(a)(1) are:

FIRST:   On the date alleged in the indictment, the defendants knowingly possessed 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance;

TWO:   The defendants possessed and intended to distribute and distributed the controlled substance (methamphetamine); and

THREE:   The defendants possessed and distributed the controlled substance (methamphetamine) within the Northern District of Oklahoma.

**B.     Title 21, United States Code, Section 856**

**Maintaining a Location or Place for the Purpose of Unlawfully Manufacturing, Storing, Distributing or Using a Controlled Substance**

The essential elements of § 856 are:

FIRST:          That the defendants "knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of unlawfully manufacturing, storing, <u>distributing</u>, or using a controlled substance;"

TWO:           Within the Northern District of Oklahoma.

## III.

## INTRODUCTION

On May 8, 2007, at approximately twelve o'clock p.m., Officer Jeff Henderson, Tulsa Police Department ("TPD"), met with a Reliable Confidential Informant ("RCI"), named Ryan Martin Logsdon, hereafter referred to as "Logsdon", who directed Officer Henderson and Special Agent Brandon McFadden of the Alcohol, Tobacco and Firearms ("ATF") to a residence located at: 7116 East Newton Street, Tulsa, Oklahoma.  Logsdon informed Officer Henderson and Special Agent McFadden that Larry Wayne Barnes, Sr., hereinafter referred to as "Larry Barnes", and Larita Annette Barnes a/k/a "Clark", hereinafter referred to as "Larita Barnes", lived at the residence and were selling methamphetamine from that location.

Thereafter, Officer Henderson and Special Agent McFadden conducted a search of Logsdon and his vehicle for any contraband drugs or money.  Officer Henderson and Special Agent McFadden did not find any money or drugs on Logsdon or in his vehicle.  After searching Logsdon and his vehicle, Officer Henderson provided him $3,000.00 of U.S.

Currency with which to purchase 3 ounces of methamphetamine.

Officer Henderson and Special Agent McFadden thereafter followed Logsdon and his vehicle to the Barnes residence, located at: 7116 East Newton Street, Tulsa, Oklahoma. Logsdon did not stop en route to the residence, and Officer Henderson and Special Agent McFadden never lost site of Logsdon or his vehicle. Thereafter, Officer Henderson and Special Agent McFadden observed Logsdon enter the Barnes' residence. Officer Henderson and Special Agent McFadden did not observe any other person enter or exit the residence while Logsdon was inside the home. Within a few minutes, Logsdon existed the Barnes' residence. Thereafter, Officer Henderson and Special Agent McFadden followed Logsdon to a pre-arranged meeting location, the Warehouse Market, located near 700 North Sheridan, Tulsa, Oklahoma. Officer Henderson and Special Agent McFadden never lost visual contact with Logsdon en route to the Warehouse Market.

Officer Henderson and Special Agent McFadden then made contact with Logsdon and he (Logsdon) gave Officer Henderson and Special Agent McFadden approximately 97.14 grams (84.97 grams net weight) of what appeared to be "crystal" methamphetamine. Officer Henderson and Special Agent McFadden conducted another search of Logsdon and his vehicle and no contraband money or other drugs were found. Corporal Wells thereafter performed a field test on the substance and the test indicated that it was methamphetamine.

Logsdon also informed Officer Henderson and Special Agent McFadden that while inside the residence, he discussed the purchase of the methamphetamine with Larita Barnes and Larry Barnes. After a price was negotiated, Logsdon provided the $3,000.00 of U.S. Currency to Larita Barnes. Thereafter, Larry Barnes handed Logsdon the quantity of methamphetamine. At the conclusion of the transaction, Logsdon and Larita Barnes discussed future methamphetamine transactions.

## IV.

### EVIDENTIARY ISSUES

**A.     Opinion Testimony by Witnesses and Narcotics Agents**

**1.     Generally**

Admission of expert testimony or lay opinion testimony is a matter within the broad discretion of the trial judge; it will not be disturbed unless it is manifestly erroneous. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152; 119 S.Ct. 1167, 1176 (1999); *United States v. Fleishman*, 684 F.2d 1329, 1335 (9th Cir. 1982), *cert. denied*, 103 S. Ct. 464 (1983); *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir. 1982); *United States v. Freeman*, 514 F.2d 1184, 1191 (10th Cir. 1975). An opinion may be given even if it embraces an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704; *United States v. Fleishman*, *supra*, 684 F.2d at 1335.

Courts have admitted a variety of opinion testimony by agents. *See e.g., United States v. Becker*, 230 F.3d 1224, 1231 (10th Cir. 2000) (admission of testimony describing the skills needed (or not needed) to be a methamphetamine cook, how many recipes cooks generally have in their home, and that cooks are gaunt and paranoid due to the effect of the chemicals on their nervous systems, are generally methamphetamine users, are violent, seek secluded locations due to the odor

cooking produces, and only trust experienced cooks with their equipment); *United States v. Fleishman*, *supra* (opinion testimony regarding defendant's *modus operandi*); *United States v. Masson*, 582 F.2d 961 (5th Cir. 1978) (opinion testimony regarding the role each defendant played in the illegal operation). *See also United States v. Luschen*, 614 F.2d 1164, 1174 (8th Cir. 1980), *cert. denied*, 446 U.S. 939 (1980); *United States v. Milton*, 555 F.2d 1198 (5th Cir. 1977); *United States v. McCoy*, 539 F.2d 1050 (5th Cir. 1976), *cert. denied*, 431 U.S. 919 (1977); *United States v. Jackson*, 425 F.2d 574, 577 (D.C. Cir. 1970). This includes testimony that the defendant was playing a specific role in the conspiracy. *Fleishman, supra*; *Mason, supra*.

In a narcotics case, a Government agent or other witness, experienced in the terminology of narcotics transactions, may testify as to the accepted meaning of slang terms used in narcotics related conversations. *United States v. Earls*, 42 F.3d 1321, 1324-25 (10th Cir. 1994); *United States v. Bailey*, 607 F.2d 237, 240 (9th Cir. 1979), *cert. denied*, 445 U.S. 934 (1980); *United States v. Mandujano*, 499 F.2d 370, 379 (5th Cir. 1974), *cert. denied*, 419 U.S. 1114 (1974); *United States v. Borrone-Iglar*, 468 F.2d 419, 421 (2d Cir. 1972), *cert. denied*, 4069 U.S. 981 (1972) (telephone conversation).

In the present case, the Government anticipates the testimony of a reliable confidential informant named Ryan Martin Logsdon. The Government anticipates Logsdon will testify with regard to his experience in purchasing and dealing methamphetamine. Further, Logsdon will testify with regard to methamphetamine transactions that he has had with the Barnes' in the past, as well as the transaction that occurred on May 8, 2007. Logsdon will testify that he has known the Barnes' since childhood. Logsdon will further testify that prior to the May 8, 2007, transaction he met with Larita Barnes and Larry Barnes at their residence, located at: 7116 E. Newton, Tulsa, Oklahoma, to inspect a quantity of methamphetamine. Logsdon will testify that during that meeting, he and Larita Barnes discussed methamphetamine quantity and purchase price and Larry Barnes provided a quantity of methamphetamine for Logsdon to inspect. Logsdon will testify that he smelled and tasted the methamphetamine and in his opinion thought it to be of good quality. Further, during that meeting, Larita Barnes broke off a piece of the methamphetamine and smoked it through a glass pipe. She informed Logsdon that it was "good shit", indicating that the methamphetamine was of good quality. Logsdon will further testify that the quantity of methamphetamine he purchased on May 8, 2007, was not the typical "user quantity" but more of a "dealer quantity." Special Agent Brandon McFadden of ATF and TPD Officer Jeff Henderson will testify regarding their respective years of experience in narcotics enforcement and the quantity of methamphetamine that was purchased on May 8, 2007, was a dealer amount.

## 2. Identification of Controlled Substances by Witnesses and Agent Experts

The nature of a drug may be established by circumstantial evidence, including evidence of what it is called, how it is handled and used, and what it was sold for. *United States v. Crisp*, 563 F.2d 1242, 1244 (5th Cir. 1977); *United States v. Quesada*, 512 F.2d 1043, 1045-46 (5th Cir. 1975),

*cert. denied*, 423 U.S. 946 (1975). A drug user may properly be allowed to give his opinion as to the identity of a controlled substance under Rule 702, F.R.E. *United States v. Atkins*, 473 F.2d 308, 313-14 (8th Cir. 1973), *cert. denied*, 412 U.S. 931 (1973).

Government agents who have seen and identified controlled substances on previous occasions are also qualified to testify regarding the identity of controlled substances, and such testimony is sufficient to sustain a conviction on a substantive charge. *United States v. Sanchez*, 722 F.2d 1501, 1506 (11th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984); *accord, United States v. Harrell*, *supra*. The introduction of a chemical analysis is not essential; rather, circumstantial evidence may suffice to identify a narcotic. *United States v. Quesada*, 512 F.2d at 1045. A defendant's objection to the introduction of such scientific evidence can only be directed at its weight and not its admissibility. *United States v. Jones*, 480 F.2d at 954, 960 (5th Cir.), *cert. denied*, 414 U.S. 1071 (1973).

In the present case, Ryan Martin Logsdon and ATF Special Agent Brandon McFadden and TPD Officer Jeff Henderson will testify regarding the methamphetamine that was delivered from the defendant's to Logsdon. It is also anticipated that a Forensic Chemist will testify regarding a quantitative and qualitative analysis of the methamphetamine that was purchased by Logsdon on May 8, 2007.

###    3.    Expert Opinion as to "intent to distribute"

Rule 704 of the Federal Rules of Evidence allows for expert testimony regarding "intent to distribute" in narcotics cases. *See United States v. Dirden*, 38 F.3d 1131, 1142 (10th Cir. 1994). In *United States v. Hooks*, 780 F.2d 1526 (10th Cir. 1986), *cert. denied*, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986), the defendant was convicted of possession of PCP with intent to

distribute. The defendant was stopped for a traffic violation and ultimately was arrested on a felony offense. Pursuant to department policy, an inventory for purposes of towing the vehicle was conducted. During the inventory, the officer detected a strong order of what he associated with PCP and ultimately discovered PCP (liquid in a jar) in the vehicle. During the trial, a DEA Agent testified as to the street value of PCP, the required dilution of the liquid before sale on the street, and that other items discovered were consistent with dilution of the PCP for sale on the street. This testimony was approved by the Tenth Circuit.

In *Fitzgerald v. United States*, 719 F.2d 1069 (10th Cir. 1983), the defendant was convicted of two counts of possession of a controlled substance with intent to distribute. Expert testimony established that drugs that were discovered had an aggregate street value of $18,400.00. Additionally, testimony was received that the scales that were found were often used to measure small quantities of drugs to sell. This testimony was approved by the Tenth Circuit.

In *United States v. Richard*, 969 F.2d 849 (10th Cir. 1992), *cert. denied*, 506 U.S. 887, 113 S.Ct. 248, 121 L.Ed.2d 181 (1992), the defendants were convicted of Conspiracy and Possession of Marijuana with Intent to Distribute. During the trial of that matter, an officer of the Oklahoma City Police Department, Narcotics Unit, testified and gave an opinion as to the roles performed by the various defendants. The Court upheld the use of his expert testimony in this fashion.

In *United States v. Brown*, 7 F.3d 648 (7th Cir. 1993), a federal drug agent was allowed to testify as an expert on whether the circumstances surrounding an alleged drug dealer's possession of a large amount of crack cocaine suggested that the drugs were intended for distribution as opposed to personal use. The witness described the typical paraphernalia associated with street level "crack" distributors and compared those items with the paraphernalia and behavior patterns usually

associated with those possessing "crack" for only for personal use. He testified that it was his opinion that the "crack" taken from the defendant was intended for distribution because the defendant had no smoking device, toted a gun and was found carrying an amount of the drug greater than that for personal use. The Court noted that because the average juror is unlikely to be knowledgeable about drug trafficking, courts have consistently allowed expert testimony concerning the behavior and accouterments of drug sellers and users.

In this case, it is anticipated that ATF Special Agent Brandon McFadden and TPD Officer Jeff Henderson will testify in regard to the quality and quantity of the methamphetamine that was distributed by the defendants on May 8, 2007, as well as the quantity of the methamphetamine discussed in the undercover encounter in late April 2007. It is anticipated that Special Agent McFadden and Officer Henderson will testify in regard to intent to distribute.

### 4. Expert testimony regarding "tools of the trade"

In *United States v. Martinez, supra,* 938 F.2d 1078 (10th Cir. 1991), the defendant was found guilty of distribution of cocaine, aiding and abetting in the distribution of cocaine, and conspiracy to distribute cocaine. The arrest and conviction arose from an undercover drug operation by DEA. Based upon undercover narcotics purchases and other investigation, a search warrant was obtained to search a residence on "Chase Street." Law enforcement found approximately $69,000 in cash, a semi-automatic "Mac 11" submachine gun, ½ pound of cocaine and a triple beam scale. A consent search of Martinez's home was conducted and $6,730 in cash was confiscated. A search of an individual revealed approximately $1,980 in cash. Over the defendant's objection, the Government introduced into evidence the various items seized from the "Chase Street" residence and the money seized from the defendant's home and the person of a visitor in the defendant's home. The defendant

contended the district court abused its discretion under Rule 403 by admitting into evidence the items seized at the Chase Street residence, i.e., the cash, the firearm, the scale and the cocaine. Evidence of defendant's possession of firearms, large sum of cash and other drug-related paraphernalia are admissible as "tools of the trade: because such evidence is circumstantial evidence that defendant was involved in drug trafficking. *See United States v. Becerra*, 97 F.3d 669, 671-72 (2d Cir. 1996), *cert denied*, 117 S.Ct. 1006 (1997); *United States v. Hardwell*, 80 F.3d 1471, 1490 (10th Cir. 1996), *reversed on other grounds,* 88F.3d 897 (10th Cir. 1996)("an individual's possession of large amounts of cash tends to show involvement in drug distribution because it is among the tools of the trade of drug traffickers"). [("The courts generally view items such as firearms, large quantities of cash, and uncharged quantities of drugs as 'tools of the trade; for distributing illegal drugs."). *United States v. Mendoza-Salgado*, 964 F.2d 993, 1008 (10th Cir. 1992). In determining that the district court did not abuse its discretion, the Court of Appeals discussed the fact that other courts have often held in the context of drug distribution offenses that items like those at issue -- firearms, large sums of cash, weighing scales, and uncharged quantities of illegal drugs -- are sufficiently probative to warrant admission under Federal Rules of Evidence 403. *Id.* Citing *United States v. Nixon*, 918 F.2d 895, 904 (11th Cir. 1990) [firearms]; *United States v. Bernal*, 719 F.2d 1475, 1477-78 (9th Cir. 1983) [weighing scales and $8,600 in cash]; *United States v. Miroyan*, 577 F.2d 489, 495 (9th Cir. 1978), *cert. denied*, 439 U.S. 896, 99 S.Ct. 258, 58 L.Ed.2d 243 (1978) [firearm and small quantity of marijuana], the court went on to state that such items have generally been viewed as "tools of the trade," that is, means for the distribution of illegal drugs (Referring to *United States v. Weiner*, *supra* at 18). Accordingly, such items have been held to be probative of an accused's participation in a drug distribution business, and, more specifically,

as to his/her participation in the charged distribution offenses. In admitting firearms and large amounts of cash, the courts have recognized the high level of violence that is commonly associated with the drug distribution business, and the prevalence of large scale cash transactions in that business. *See United States v. Wood*, 834 F.2d 1382, 1386 (8th Cir. 1987) ("It is axiomatic that evidence concerning the possession or expenditure of large amounts of currency is admissible where the defendant is charged with a crime in which pecuniary gain is the basic motive"). In *Wood*, the Eighth Circuit Court of Appeals stated those rulings were consistent with cases in the Tenth Circuit and cited *United States v. McDonald*, 933 F.2d 1519 (10th Cir.), *cert. denied*, 502 U.S. 897, 112 S. Ct. 270, 116 L.Ed.2d 222 (1991). The ruling was also consistent with *Fitzgerald v. United States*, 719 F.2d at 1069.

In *United States v. Sturmoski*, 971 F.2d 452 (10th Cir. 1992), the defendant was convicted of possession of a firearm after former conviction of a felony, possession of a firearm with obliterated serial number, various drug violations and carrying and using a firearm to facilitate a drug trafficking offense. A search warrant was issued for the defendant's residence. When the search warrant was executed, law enforcement found the defendant located in an office trailer, sitting next to a loaded semi-automatic pistol, recipes for the manufacturing of methamphetamine, chemicals, laboratory equipment and a purchase bid for chemicals. During the trial, an agent was qualified as an expert in clandestine methamphetamine laboratories. He testified that firearms played a role in the operation of the laboratory and were normally used to protect the investment in chemicals and equipment. The defendant challenged the agent's expert testimony in the areas of methamphetamine labs and the use of firearms in the operation of those labs. He claimed that this subject matter was not appropriate for an expert and was not at all "helpful to the trier of fact" as

required by Fed. R. Evid. 702. The court determined that the agent's testimony was useful to determine the value of clandestine laboratories and the presence of firearms at those laboratories. The court went on to say that without the agent's testimony the jury would not have known the investment that a methamphetamine lab requires, or the desire of the operators of such a lab to protect the investment through the use of firearms. Further, under Fed. R. Evid. 704, opinion testimony describing the overall activities based on "the tools of the narcotics trade" found with the defendant is permissible.

Records in the form of a personal telephone directory and a notebook containing names, telephone numbers, and records of drug transactions were relevant to the existence of a drug conspiracy and the identities of its members, the U.S. Court of Appeals for the Seventh Circuit held as it approved admission of these materials. *United States v. Nava-Salazar*, 30 F.3d 788 (7th Cir. 1994). These records qualified as "tools of the trade" and were admissible just as a scale and drug paraphernalia were admissible in *United States v. Molinaro*, 877 F.2d 1341 (7th Cir. 1989), and a scale was admissible in *United States v. Adamo*, 882 F.2d 1218 (7th Cir. 1989).

In this case, Ryan Martin Logsdon will testify that during the late April 2007 meeting with the defendants and the May 8, 2007, meeting, quantity, quality, and purchase price for methamphetamine were discussed. Further, Logsdon will testify that he observed digital electronic scales, baggies, and other items consistent with distribution of methamphetamine.

B.      **Non-Expert Opinion and Identification**

        **Identification of Narcotics Substances by Accomplice and Lay Witnesses**

Frequently in narcotics cases, defendants attempt to prevent an informant or accomplice from identifying narcotics substances on the ground that the witness is not an expert. Such objections are

improperly raised because it is a question of competency and goes to weight and not admissibility.

In *United States v. Eubanks*, 591 F.2d 513, 518 (9th Cir. 1979) (reversed on other grounds), the

defendants objected to the testimony of a witness that she had seen them in possession of heroin, and

the Court stated:

> "[the defendant's] claim that [the witness] was incompetent to identify heroin is not a reason to exclude her testimony because it goes to the weight and not the admissibility of the evidence."

The identification of a substance as a narcotic can be proven circumstantially. *See United*

*States v. Crisp*, 563 F.2d 1242 (5th Cir. 1977) (emphasizing the way the substance was handled,

including cutting, weighing, testing over a flame, and being sold for substantial sums of money, and

being referred to as "coke"); and *United States v. Atkins*, 473 F.2d at 313. (holding that an addict

may qualify as an expert and express an opinion regarding the narcotic nature of a substance).

As the Tenth Circuit stated in *United States v. DeFundora*, 893 F.2d 1173 (10th Cir. 1990):

> The Government need not introduce scientific evidence to prove the identity of a substance. *See United States v. Baggett*, No. 88-2767, slip op. at 3-4 (10th Cir. Nov. 28, 1989) (to be reported at 890 F.2d 1095). As long as there is sufficient lay testimony or circumstantial evidence from which a jury could find that a substance was identified beyond a reasonable doubt, the lack of scientific evidence does not warrant reversal. *See United States v. Scott*, 725 F.2d 43, 45-46 (4th Cir. 1984); *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir. 1976); *see also, United States v. Meeks*, 857 F.2d 1201, 1204 (8th Cir. 1988); *United States v. Harrell*, 737 F.2d 971, 978 (11th Cir. 1984), *cert. denied*, 470 U.S. 1027, 105 S.Ct 1392 (1985). The lay testimony and circumstantial evidence relevant to determining the identity of a substance includes:
>
> > "`evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price

was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of illegal narcotic by the defendant or others in [her] presence . . . .'"

*Baggett*, slip op. at 4 (quoting *Dolan*, 544 F.2d at 1221); *see also United States v. Osgood*, 794 F.2d 1087, 1095 (5th Cir. 1986), *cert. denied*, 479 U.S. 994 (1986); *Harrell*, 737 F.2d at 978-79; *Scott*, 725 F.2d at 45-46.

Here, there is direct evidence in the record that the substances allegedly sold by defendant were cocaine. Phillip testified that she, and on some occasions, others, sampled the alleged cocaine and that when she ingested it, it affected her in the same way as cocaine had affected her in the past. Phillip further testified that the first quantity purchased from defendant was chemically tested.

The record also contains indirect evidence tending to corroborate the direct evidence that the substances sold were cocaine. For example, Phillip testified that she was able to resell the substances as cocaine. Phillip also testified that defendant had attempted to have Phillip travel to Miami to purchase some cocaine and that defendant had stated that another individual wanted to take over her cocaine business. In addition, DEA agents seized approximately 64 grams of 92-percent pure cocaine from defendant on March 19, 1988. Although that seizure was not the basis for any of the eight distribution counts, it does lend credence to the conclusion that defendant was dealing in cocaine.

In light of this evidence in the record, we believe that a reasonable jury could conclude beyond a reasonable doubt that the substances allegedly sold by defendant were cocaine. We therefore affirm defendant's convictions for distribution of cocaine. *Id.* at 1175-76.

In the present case, the Government anticipates that Ryan Martin Logsdon will testify regarding the methamphetamine he was able to inspect, as well as the 3 ounces of methamphetamine he purchased from the defendants on May 8, 2007. It is anticipated that he will identify the illegal substances as being in fact good quality "crystal" methamphetamine. He is certainly qualified to testify in that regard.

## C.    **Chain of Custody**

The test of admissibility of physical objects connected with the commission of a crime requires a showing that the object is in substantially the same condition as when the crime was committed or when the object was seized. Factors to be considered are the nature of the article, circumstances surrounding its preservation and custody, and the likelihood of intermeddlers tampering with it. There is, however, a presumption of regularity in the handling of exhibits by public officials. *United States v. Wood*, 695 F.2d 459, 462 (10th Cir. 1982); *United States v. Kaiser*, 660 F.2d 724, 733 (9th Cir. 1981), *cert. denied*, 102 S.Ct. 1467 (1982).

A chain of custody indirectly establishes the identity and integrity of the evidence by tracing its continuous whereabouts. *United States v. Zink*, 612 F.2d 511, 514 (10th Cir. 1980). The criterion for admissibility is a showing that the physical evidence proffered is in substantially the same condition as when the crime was committed. *United States v. Wood*, 695 F.2d at 462; *Reed v. United States*, 377 F.2d 891, 893 (10th Cir. 1967); *see also United States v. Brown*, 482 F.2d 1226, 1228 (8th Cir. 1973). A court's determination that the showing as to identity and nature of the exhibit is sufficient to warrant the admissibility of it into evidence is reviewed for a clear abuse of discretion. *United States v. Wood*, 695 F.2d at 462; *United States v. Gagnon*, 635 F.2d 766, 770 (10th Cir. 1980), *cert. denied*, 451 U.S. 1018 (1981); *United States v. Zink*, 612 F.2d at 514; *United States v. Coleman*, 524 F.2d 593, 594 (10th Cir. 1975) (*per curiam*); *O'Quinn v. United States*, 411 F.2d 78 (10th Cir. 1969). Absent an abuse of discretion, deficiencies in the chain of custody go to the weight of the evidence and not its admissibility. *See United States v. Wood*, 695 F.2d at 462. *See, e.g., Reed v. United States*, 377 F.2d at 894, where the Tenth Circuit affirmed the trial court's finding of admissibility of certain evidence even though there were minor inconsistencies in the testimony.

The court concluded that such inconsistencies go only to the weight accorded the evidence. *Id.*

Also, it is not necessary that the Government establish all links in the chain of custody of an item or call all persons who were in a position to come in contact with it. *See United States v. Wood*, *supra*; *United States v. Kaiser*, *supra*; *Reyes v. United States*, 383 F.2d 734 (9th Cir. 1967).

In the present case, the Government anticipates Ryan Martin Logsdon will testify with regard to the May 8, 2007, delivery of methamphetamine from the defendants. Immediately after the delivery, Logsdon left the defendants' residence, located at: 7116 E. Newton Street, Tulsa, Oklahoma, and drove directly to a pre-arranged meeting location, the Warehouse Market, located near 700 North Sheridan, Tulsa, Oklahoma. Logsdon was surveilled from the defendants' residence to the meeting location and made no stops nor met anybody. As soon as Logsdon arrived at the meeting location, he provided the methamphetamine to TPD Officer Henderson and Special Agent McFadden, who placed the methamphetamine into evidence, TPD property receipt BB-8204.

## D.    Hearsay

### 1.    Co-Conspirator Statements

The acts of any one conspirator to further the conspiracy are the acts of all, and each conspirator may be held responsible for the substantive crimes committed by his cohorts. *Pinkerton v. United States*, 328 U.S. 640 (1946); *United States v. Pearson*, 508 F.2d 595, 597 (5th Cir.), *cert. denied*, 423 U.S. 845 (1975); *United States v. Bolts*, 558 F.2d 316, 325-26 (5th Cir.), *cert. denied*, 434 U.S. 930 (1977).

While Rule 801(d)(2)(E), F.R.E., generally controls the admissibility of declarations of a co-conspirator, acts of co-conspirators are admissible without meeting the predicate foundation for declarations. *Lutwak v. United States,* 344 U.S. 604, 617-18 (1953).

A trial court's admission of co-conspirator hearsay without making the preliminary findings that Fed. R. Evid. 801(d)(2)(E) requires does not automatically doom a conviction. The Tenth Circuit had announced a rule of *per se* reversal in *United States v. Radeker*, 664 F.2d 242 (10th Cir. 1981); now, however, it has abandoned that position in favor of one that allows the trial court to make after-the-fact findings. *United States v. Perez*, 989 F.2d 1574 (10th Cir. 1993) (*en banc*).

An individual defendant's own declarations are independent evidence of that defendant's participation in the conspiracy. *United States v. Fredericks*, 586 F.2d 470, 475-76 (5th Cir. 1978), *cert. denied*, 440 U.S. 962 (1979); *United States v. Cerone*, 452 F.2d 274, 284 (7th Cir. 1971), *cert. denied*, 405 U.S. 964 (1972). When the co-conspirator's statement is "*res gestae*" and offered to show concealment or guilty knowledge, it is admissible. *United States v. Bankston*, 603 F.2d 528 (5th Cir. 1979); *United States v. Pirolli*, 673 F.2d 1200 (11th Cir.), *cert. denied*, 459 U.S. 871 (1982); *United States v. Mackey,* 571 F.2d 376 (7th Cir. 1978). A statement may also be independently admissible when made in the defendant's presence or to obtain the confidence of, or allay the suspicions of, a third party. *United States v. Miller*, 664 F.2d 94, 97-98 (5th Cir. 1981), *cert. denied*, 459 U.S. 854 (1982); *United States v. James*, 510 F.2d 546, 549-50 (5th Cir.), *cert. denied*, 423 U.S. 855 (1975); *United States v. Barnes*, 604 F.2d 121, 157 (2d Cir. 1979), *cert. denied*, 446 U.S. 907 (1980). Statements of reassurance which "serve to maintain trust and cohesiveness . . . or inform each other of the current status of the conspiracy in furtherance of the conspiracy and are admissible. *United States v. Ammar*, 714 F.2d 238, 252 (3d Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). In addition, statements identifying a fellow co-conspirator, *United States v. Handy*, 668 F.2d 407, 407 (8th Cir. 1982), or identifying a co-conspirator as a source of narcotics, *United States v. Lambros*, 564 F.2d 26, 30 (8th Cir. 1977), are admissible. Also admissible are statements designed to induce a co-conspirator to act. *Ebeling v. United States*, 248 F.2d 429, 437 (8th Cir. 1957).

Tenth Circuit precedent adopting these examples is found in *United States v. Roberts*, 14 F.3d 502 (10th Cir. 1993); *United States v. Perez, supra*; *United States v. Caro*, 965 F.2d 1548 (10th Cir. 1992); *United States v. Wolf*, 839 F.2d 1387 (10th Cir. 1988); and *United States v. Smith*, 833

F.2d 213, 221-22 (10th Cir. 1987).

Not only do oral statements fall within Rule 801(d)(2)(E), but also written statements. Handwritten notes found in defendants' briefcases and written by a member of the criminal enterprise are admissible as statements of a co-conspirator. *United States v. Jennell*, 749 F.2d 1302 (9th Cir. 1984), *cert. denied*, 106 S.Ct. 114 (1985). Nautical charts found on board a vessel importing marijuana have been held to be co-conspirators' statements. *United States v. Mazyak*, 650 F.2d 788 (5th Cir. 1981), *cert. denied*, 455 U.S. 922 (1982). A vessel's log under similar circumstances has been admitted as a co-conspirator's statement. *United States v. Postal*, 589 F.2d 862 (5th Cir.), *cert. denied*, 444 U.S. 832 (1979).

Statements made by a co-conspirator are not hearsay under Federal Rule of Evidence 801(d)(2)(E) if such statements are made during the course and in furtherance of the conspiracy. In this context, the "in furtherance of" requirement is a broad concept that includes statements made for recruiting purposes, that is, to induce prospective co-conspirators to join the conspiracy. *United States v. Goodman,* 605 F.2d 870, 878 (5th Cir. 1979). The concept also covers statements made by one co-conspirator to keep another conspirator abreast of the current status of the operation of the conspiracy. *Id.* Thus, a narrative of past facts is clearly admissible as a co-conspirator declaration when a conspirator provides such information to his co-conspirators to keep them abreast of the conspiracy's current status. *United States v. Pool*, 660 F.2d 547, 562 (5th Cir. 1981) (Unit B). Moreover, the concept includes expressions of dissatisfaction with co-conspirators. *United States v. Bynum*, 566 F.2d 914 (5th Cir.), *cert. denied*, 439 U.S. 840 (1978).

Statements are admissible under the co-conspirator exception if they are intended "'to promote the conspiratorial objectives.'" *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986)

(quoting *United States v. Hamilton*, 689 F.2d 1262, 1270 (6th Cir. 1982)).  The statements need not actually have furthered the conspiracy to be admissible.  *United States v. Reyes,* 798 F.2d at 384 (recognizing that this circuit has "not talismanic formula for ascertaining which conspirator's statements are 'in furtherance' of the conspiracy").  Statements made by a co-conspirator to allay suspicions are admissible.  *United States v. Miller*, 664 F.2d 94, 98 (5th Cir. 1980), *cert. denied*, 459 U.S. 854 (1982) (citing *United States v. James*, 510 F.2d 546, 549-50 (5th Cir. 1975)).  Similarly, concealment of the crime done in furtherance of the main criminal objectives of the conspiracy falls within the co-conspirator exception.  *United States v. Howard*, 770 F.2d 57, 61 (6th Cir. 1985); *United States v. Pennett*, 496 F.2d 293, 296 (10th Cir. 1974).  In *United States v. Grunewald*, the Supreme Court noted that concealment furthers the main criminal objectives where "the successful accomplishment of the crime necessitates concealment."  *Grunewald v. United States*, 353 U.S. 391, 405 (1957).  Conversely, concealment after the main conspiracy has ended falls beyond the purview of the co-conspirator exception.  *United States v. Silverstein*, 737 F.2d 864, 867 (10th Cir. 1984).

The fact that one party to the conversation was a Government informant does not preclude the admission of the conspirator's statements under Rule 801(d)(2)(E).  *United States v. Mealy*, 851 F.2d 890 at 901 (7th Cir. 1988).

Under the co-conspirator rule, the determination of whether the admit hearsay evidence is within the discretion of the trial judge.  *See United States v. Hernandez*, 829 F.2d at 995-95; *United States v. Reyes*, 798 F.2d at 383.  The appellate courts, therefore, will not reverse the conviction unless the district court abused its discretion.  *Id.* (citing *United States v. Cooper*, 733 F.2d 1360 (10th Cir. 1984)).

There exists no requirement that other conspirators must acknowledge, affirm, or even have

knowledge of a co-conspirator's statements in order for them to be admissible. Under *Pinkerton v. United States*, 328 U.S. 640 (1946), co-conspirators are each liable for the statements, acts, and substantive crimes which are done, made, or committed in furtherance of the conspiracy, even when such activities occur without the other defendants' knowledge or participation. *United States v. Diaz*, 655 F.2d 580 (5th Cir. 1981), *cert. denied*, 455 U.S. 910 (1982). Thus, once the foundation for the admission of co-conspirators' statements is laid such statements are admissible against each conspirator whether or not present at the time and place of the making of the statement. *Padgett v. United States*, 283 F.2d 244 (5th Cir. 1960).

It is not necessary that a declarant be criminally liable as a co-conspirator for his statements to be admissible under Rule 801(d)(2)(E). *See, e.g., United States v. Weisz*, 718 F.2d 413 (D.C. Cir. 1983), *cert. denied*, 465 U.S. 1027 (1984); *United States v. Kendall*, 665 F.2d 126 (7th Cir. 1981), *cert. denied*, 455 U.S. 1021 (1982); *United States v. Gil*, 604 F.2d 546 (7th Cir. 1979); *United States v. Trowery*, 542 F.2d 623 (3d Cir. 1976), *cert. denied*, 429 U.S. 1104 (1977). In *Bourjaily v. United States*, 107 S.Ct. 2775 (1987), the Supreme Court set forth the findings which the trial court must make before admitting co-conspirator statements under 801(d)(2)(E). The court must find by a preponderance of the evidence "that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made 'in the course of and in furtherance of the conspiracy.'" *Id.* at 2778 (citing Fed.R.Evid. 104). In making this determination the court may "consider any evidence, whatsoever, bound only by the rules of privilege." *Id.* at 2780. Accordingly, the court can consider the co-conspirator's statements sought to be admitted as evidence of the elements required for admissibility of a statement under Rule 801(d)(2)(E).

As a consequence of *Bourjaily*, the pattern instruction telling the jury that "it may consider

only the acts and statements of [a] particular defendant" in deciding whether that defendant participated in a conspiracy, has been disapproved. *United States v. Martinez de Ortiz*, 907 F.2d 629 (7th Cir. 1990) (*en banc*), *cert. denied*, 498 U.S. 1029 (1991).

In the present case, the Government intends on calling Ryan Martin Logsdon to testify regarding the May 8, 2007, methamphetamine transaction. Further, it is anticipated that Logsdon will also testify regarding a meeting that occurred in late April 2007, where he observed and inspected a quantity of methamphetamine. During these encounters with the defendants, Logsdon and the defendants discussed methamphetamine quality, quantity, purchase price, and other methamphetamine related subjects as they relate to the defendants' conspiracy to distribute methamphetamine.

The statements of the defendants are admissible. They are conversations and negotiations between the defendants and the reliable confidential informant, Ryan Martin Logsdon, who were involved in discussions relating to methamphetamine transactions. The conversations and negotiations were made during and in furtherance of the defendants' conspiracy and should therefore be admissible pursuant to Federal Rules of Evidence 801(d)(2)(E).

## 2. Matters Not Offered for the Truth

"`Hearsay' is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Many times, a statement will be offered to show what a person believed at a given time, even if what he believed was not true or has not been independently proved. Such statements are not hearsay. *United States v. West*, 666 F.2d 16, 20 (2d Cir. 1981); *Hernandez v. United States*, 608 F.2d 1361, 1364 (10th Cir. 1979). Statements offered to "demonstrate the circumstances which served as a

foundation or basis in fact for the witnesses' subsequent actions" also are not hearsay because they are not offered to prove the truth of the matters asserted.  *United States v. Freeman*, 514 F.2d 1184, 1191 (10th Cir. 1975).  Similarly, statements providing "background and continuity and explanation of subsequent taped conversations" are not hearsay.  *United States v. Conn*, 769 F.2d 420, 422 (7th Cir. 1985).

In <u>Modern Approach to Evidence</u> (West 1977), Lambert and Saltzburg discuss verbal acts at page 375:

> Conspirators' liability . . . derives from the fact that the activity of the enterprise they have joined is itself illegal.  Thus, statements of conspirators which promote the ends of the conspiracy are properly analyzed as not hearsay if offered as actions of the conspiracy.  If conspirators' statements are designed to achieve the goals of the conspiracy, they are verbal actions taken for illegal ends and may be proved as such.  Just as conspirators are mutually responsible for physical action taken on behalf of the conspiracy so are they responsible for verbal action.

The Supreme Court discussed the admissibility of out-of-court statements by co-conspirators as <u>non-hearsay</u> in *Anderson v. United States*, 417 U.S. 211 (1974).  Anderson involved a prosecution for conspiracy to cast fictitious votes.  The Supreme Court approved the use of statements by co-conspirators at an election hearing.  These statements were offered as circumstantial evidence of conspiracy, not for the proof of the matter asserted.  *United States v. Lopez*, 584 F.2d 1175, 1179 (2d Cir. 1978) and *United States v. Calvert*, 523 F.2d 895, 907 (8th Cir. 1975), *cert. denied*, 424 U.S. 911 (1976), provide examples of cases where statements were offered under the verbal act theory to show that such statements were made.

Orders have been found to be non-hearsay verbal acts based on the rationale that "[a]n order or instruction is, by its nature neither true nor false and thus cannot be offered for its truth."  *United*

*States v. Shepherd*, 739 F.2d 510, 514 (10th Cir. 1984), citing *United States v. Keane*, 522 F.2d 534, 558 (7th Cir. 1975), *cert. denied*, 424 U.S. 976 (1976).  Orders or instructions are offered to show that they occurred, not for the truth of the matter asserted.  *United States v. Alvarez*, 584 F.2d 694, 697-98 (5th Cir. 1978).

**3.**  **Admissions**

Rule 801(d)(2)(A) of the Federal Rules of Evidence provides:

(d)  Statements which are not hearsay

A statement is not hearsay if --

(2)  Admission by party-opponent.  The statement is offered against a party and is

(A)  his own statement, in either his individual or a representative capacity . . . .

It is an axiomatic principle that declarations made by defendants, themselves, are not hearsay but rather qualify as independent evidence.  "Any and all statements of an accused person, so far as not excluded by the doctrine of confessions or by the privilege against self-incrimination, are usable against the accused as admissions and are not hearsay."  *United States v. Evans*, 572 F.2d 455, 488 (5th Cir. 1978), *cert. denied*, 439 U.S. 870 (1978); *see Adams v. American Guarantee and Liability Ins. Co.*, 233 F.3d 1242, 1248 (10th Cir. 2000); *United States v. Matlock*, 415 U.S. 164, 172 (1974) (relying on Rule 801(d)(2)(A) "A party's own statements offered against him at trial are not hearsay"; admission that he was married).  *See also United States v. Archbold-Newball*, 554 F.2d 665, 676 (5th Cir.), *cert. denied*, 434 U.S. 1000 (1977); 4 J. Wigmore, Evidence § 1048 (J. Chadbourn rev. 1972) ("The statements made out of court by a party opponent are universally deemed admissible, when offered against him"); McCormick, Evidence § 262 (2d ed. 1972) ("[I]t

is clear today that admissions of a party come in as substantive evidence of the facts admitted, and that no foundation or predicate, by examining the party himself, such as may be required for impeaching evidence is a prerequisite for proof of admission").

In simple terms, a statement is not hearsay if offered against the party who made it.  Thus any statements, testimony, affidavits, letters, and memos made by party opponents are not hearsay.  For example, in a RICO prosecution the Fifth Circuit approved the admission of the defendant's statement that he could do favors "because he was in with the Sheriff," noting that it was "most damning evidence" of the defendant's guilt.  *United States v. Bright*, 630 F.2d 804, 834 (5th Cir. 1980).

Conversely, courts have held that statements which are not offered <u>against</u> a <u>party opponent</u> are self-serving and inadmissible hearsay. In *United States v. Anderson*, 577 F.2d 258 (5th Cir. 1978), the court upheld the denial of admission on behalf of one of the defendants of his grand jury testimony.

As pointed out above, the present case involves admissions made during conversations between the defendants and the informant, Ryan Martin Logsdon. Those statements are admissible as being not offered for the truth of the matter asserted under Fed.R.Evid. 801(c); or an admission by a party opponent under Fed.R.Evid. 801(d)(2)(A).

4. <u>**Residual Hearsay**</u>

Fed. R. Evid. 803(24) and Rule 804(5):

    a. The statement may be admitted even though it is not covered by any other exception, if the statement has equivalent circumstantial guarantees of trustworthiness **and** if the court finds:

        I. The statement is evidence of a material fact;

        ii. The statement is more probative on that point than any other evidence which the proponent can reasonably procure; and

        iii. The general purposes of the rules and the interests of justice will be served by the admission of the statement.

    b. <u>Notice</u> of an intent, under either Rule 803(24) or Rule 804(5), to use a statement and the particulars of the statement must be given to the opponent with a fair opportunity for the opponent to meet the offer of the statement.

Prior grand jury testimony falls within the category of hearsay to which the exception 804(b)(5), the residual exception, potentially applies. Grand Jury testimony of defendant's spouse

was admissible in an illegal firearms possession case, under the residual hearsay exception, following her invocation of spousal privilege against testifying, even though she was not represented by counsel before the grand jury; testimony was given under oath, it concerned the matters within her personal knowledge, she had never recanted testimony, and there were no indications she was unreliable. Further, she had not testified under a grant of immunity, there was no extrinsic evidence undermining her version while some extrinsic evidence supported it, and she had no significant motive to hurt husband by lying. *United States v. Donlon*, 909 F.2d 650 (1st Cir. 1990). Admission into evidence of Grand Jury testimony of ex-wife of defendant who was unavailable witness at time of trial, in prosecution of defendant for filing false income tax returns, and fraudulent use of social security number, did not violate the confrontation clause of the Sixth Amendment to the United States Constitution; ex-wife actually made the statement in question to grand jury and testimony was given voluntarily under oath and was substantially corroborated by other independent evidence supporting veracity of her grand jury testimony. *United States v. Guinan*, 836 F.2d 350 (7th Cir. 1988).

Introduction of a Government witnesses' prior inconsistent statements under the catch-all exception to the hearsay rule did not implicate the defendant's right to confrontation where witness was on stand and defendants were able to cross-examine him, notwithstanding defendant's contention that the court improperly and exclusively relied on corroborating evidence in finding requisite circumstantial guarantees of trustworthiness. Corroborating evidence is a valid consideration in determining the trustworthiness of Government witnesses' prior inconsistent statements for purposes of the catch-all exception to the hearsay rule. *United States vs. Valdez-Soto*, 31 F.3d 1467 (9th Cir. 1994). In *Valdez-Soto*, the defendants challenged the district court's

admission into evidence of the Government witnesses' prior inconsistent statements under the catch-all exception to the hearsay rule, claiming the court improperly and exclusively relied on corroborating evidence in finding the requisite circumstantial guarantees of trustworthiness. In *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139 (1990), the court held that corroborating evidence could not be used in establishing the reliability of a non-testifying declarant's statements; the trial court had to limit itself to evidence surrounding the actual making of the statements. In *Wright,* the Court reasoned that to allow the use of corroborating evidence would be "at odds" with the requirement that hearsay evidence admitted under the confrontation clause would be so trustworthy that cross-examination of the declarant would be of marginal utility." *Id.* at 823, 110 S.Ct. at 3150. However, the Court in *Valdez-Soto* stated that the facts in *Wright* differed from the case at hand in one crucial respect, the Government there was seeking to introduce the out-of-court statement of a declarant who was not on the witness stand. The Court went on to say, by contrast "Cortez was on the stand, and defendants here were able to cross-examine him (and take advantage of all other benefits of confrontation) to their heart's content. We are aware of no Supreme Court case, or any other evidence, which holds that introduction of hearsay evidence can violate the confrontation clause where the putative declarant is in court, and the defendants are able to cross-examine him. *United States vs. Owens,* 484 U.S. 554, 108 S.Ct. 838 (1988). *Valdez-Soto*, 31 F.3d at 1470.

In the absence of concerns about the accused's right to confrontation, the trial judge has a fair degree of latitude in deciding whether to admit statements under Fed. R. Evid. 803(24). The Rule requires only that the hearsay have "equivalent, circumstantial guarantees of trustworthiness" to any of the rules and enumerated exceptions. In addition, courts look to such factors as "the declarant's perception, memory, narration, or sincerity concerning the matter asserted." *United*

*States vs. Friedman*, 593 F.2d 109, 119 (9th Cir. 1979); *See, e.g. Larez vs. City of Los Angeles,* 946 F.2d 630, 643 (9th Cir. 1991) (declarant's out-of-court statements were "especially reliable" under Rule 803(24) because they corroborated one another).

**E.**     **Witness Security - Cross-Examination**

The Government has the right to vigorously oppose the revelation of background material concerning a witness which could endanger that witness or the witness's family.  *United States v. Contreras*, 602 F.2d 1237, 1239 (5th Cir.), *cert. denied*, 444 U.S. 971 (1979); *United States v. Hansen*, 569 F.2d 406, 410 (5th Cir. 1978).

In this regard, the Government anticipates the informant, Ryan Martin Logsdon will testify at trial against the defendants.  The Government would ask the Court to restrict the cross-examination of Logsdon, so as to not expose any background material relevant to him or his family for their personal safety.

**F.**     **The Details of a Witness' Prior Convictions May Not Be Explored on Cross-Examination**

A witness may be impeached with evidence that he has previously been convicted of a crime. Federal Rule of Evidence 609(a) states as follows:

> (a) **General Rule.**   For the purpose of attacking the credibility of a witness,
>
> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
>
> (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement,

regardless of the punishment.

The cross-examination of the witness should be limited to establishing the dates of the conviction, the nature of the crime, and the punishment.  It would ordinarily be improper to inquire in to the <u>details</u> of the crime.  *United States v. Wolf*, 561 F.2d 1376, 1381 (10th Cir. 1977).  If the witness is the defendant, it would be particularly important to protect him from being convicted on a current charge because of his past conduct. *Id.*; *See also Martin v. United States*, 404 F.2d 640, 642-43 (10th Cir. 1968) (the prosecution is not given unlicenced latitude in cross-examination of the accused about the prior felony); *Tapia v. Rodriguez*, 446 F.2d 410, 413 (10th Cir. 1971) (defendant's credibility may be impeached by limited reference to prior conviction).

In *United States v. Sampol*, 636 F.2d 621, 670 (D.C. Cir. 1980) the Government had brought out a witness' criminal record in its direct case, including the dates of his convictions.  The defendants attempted to go beyond the convictions by exploring the length of time the witness had spent in jail, the impact of this incarceration upon him, his probation record and other collateral matters.  The court found that the trial judge had properly restricted this examination to the convictions and the dates.

Cross-examination of witnesses concerning prior convictions is limited to the number of convictions, the nature of the offenses and the dates and times of the convictions.  *United States v. Amahia*, 825 F.2d 177, 179-80 (8th Cir. 1987); *United States v. Perry*, 740 F.2d 854, 858-59 (11th Cir. 1984).  In the  *Perry* case, the court found that sustaining the Government's objection to questions regarding the amount of cocaine involved in a witness' prior conspiracy prosecution did not constitute an infringement of the defendant's confrontation right or an abuse of the court's discretion.  *Id.*

The scope of cross-examination regarding prior convictions is "strictly limited in order to avoid the confusion resulting from the collateral issues, and also to avoid unfairness to the witness." *United States v. Roenigk*, 810 F.2d 809, 814 (8th Cir. 1987), *United States v. Harding*, 525 F.2d 84, 88 (7th Cir. 1975).

It is only where the witness on direct examination, attempts to explain away his conviction or minimize his guilt that greater latitude should be permitted on cross-examination. In that situation, the witness may be questioned about any fact which are relevant to this direct examination. *United States v. Wolf*, 561 F.2d at 1381.

**G.** **Extrinsic Evidence of Specific Instances of Conduct May Not Be Used to Attack the Credibility of a Witness**

Rule 608(b) of the Federal Rules of Evidence provides in pertinent part, as follows:

> Specific instances of the conduct of a witness, for the purpose of attacking . . . his credibility, other than conviction of a crime as provided in rule 609, may not be provided by extrinsic evidence. They may, however, <u>in the discretion of the court</u>, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, . . . (emphasis added)

Thus, the court <u>may</u>, in its discretion, permit inquiry into specific instances of conduct to attack the credibility of a Government witness on cross-examination. However, a defendant may not introduce extrinsic evidence of the witness' conduct to attack credibility. *United States v. Mangiameli*, 668 F.2d 1172, 1176 (10th Cir. 1982).

The defendant cannot call witnesses to recount "specific bad acts" of Government witnesses. The defense is limited to asking the Government witness directly. *United States v. Petitjean*, 883 F.2d 1341, 1348 (7th Cir. 1989). Similarly, the defense cannot use cross-examination on one witness to raise impeachment matters of another witness. *United States v. Rivera*, 971 F.2d 876, 886

(2d Cir. 1992).

Cross-examination is not an absolute or unlimited right and as long as this defendant's basic confrontation right is protected, it is within the trial court's discretion to limit the scope of cross-examination. *United States v. Atwell*, 766 F.2d 416, 419 (10th Cir. 1985). The trial court, therefore, is free to determine whether inquiry into the prior conduct of a witness is probative of his truthfulness or untruthfulness, and Rule 608(b) does not require it to allow such inquiry. *Id.* at 420. Even if the cross-examination concerning a witness' prior conduct would be appropriate under Rule 608(b), Federal Rule of Evidence 403 permits the court to exclude it when the danger of confusing the issues or misleading the jury substantially outweighs the probative value of the evidence. *Id.*

In *United States v. Estell*, 539 F.2d 697 (10th Cir. 1976), the court makes it quite clear that evidence of specific instances of prior conduct to attack credibility must be developed through cross-examination, rather than by introduction of extrinsic evidence. Subsection (b) further provides that in the discretion of the court, credibility may be attacked by showing specific instances of the witness' prior misconduct, other than convictions, which bear on veracity. The showing must be in the form of cross-examination of the witness himself; extrinsic evidence may not be introduced. Thus, the rule recognizes that collateral transactions can be used to test credibility, but it also recognizes that the court has the discretion to exclude such evidence as not probative of truthfulness or untruthfulness. (Emphasis added.)

*Id.* at 700.

*See also United States v. Morales-Quinones,* 812 F.2d 604, 613-14 (10th Cir. 1987); *United States v. Girdner*, 773 F.2d 257, 261 (10th Cir. 1985); *Bennett v. Longacre*, 774 F.2d 1024, 1027-28 (10th Cir. 1985).

## H.    Cross-Examination as to Specific Instances of Conduct and Rebuttal Evidence May be Allowed to Rebut Character Evidence

A defendant is free to present evidence, in the form of opinion or reputation testimony, of his pertinent favorable character traits. Fed.R.Evid. 404 (a)(1); 405 (a); *United States v. Yazzie*, 188

F.3d 1178, 1189 (10th Cir. 1999). If the defendant chooses to present this character evidence, the prosecution may offer in rebuttal its own opinion or reputation evidence of the defendant's character. Further, the Government may challenge the defendant's character witnesses about their knowledge of relevant specific instances of the defendant's conduct. Fed.R.Evid. 404 (a)(1); 405 (a). This "specific act" cross-examination is allowed to test the knowledge and credibility of the witness. *Michelson v. United States*, 335 U.S. 469 (1948); *United States v. Monteleone*, 77 F.3d 1086, 1089 (8th Cir. 1996). Before proceeding with this cross-examination of a defendant's character witnesses, the Government must pass a two-prong test: 1) the Government must demonstrate a good faith factual basis for incidents used in cross-examination; and 2) the incident(s) must be relevant to the character traits in issue in the case. *Id*. at 1089-90.

In addition, under Fed.R.Evid. 405, a party may introduce evidence of specific instances of conduct only when "character is in issue" in the strict sense. *United States v. Talamante*, 981 F.2d 1153, 1155 (10th Cir. 1992), citing *Perrin v. Anderson*, 784 F.2d 1040, 1045 (10th Cir. 1986). Character is in issue in the strict sense when it is a "material fact that under the substantive law determines rights and liabilities of the parties. *Perrin v. Anderson*, 784 F.2d at 1045, citing *McCormick* § 187, at 551. The relevant question is whether proof or failure of proof of the character trait by itself actually satisfies an element of the charge, claim or defense. *United States v. Keiser*, 57 F.3d 847, 856 (9th Cir.), *cert. denied*, 516 U.S. 1029, 116 S.Ct. 676 (1995).

## I. Relevant Evidence May Be Admissible Although Prejudicial to Defendant

During the Government's case in chief, it intends to introduce 404(b) evidence regarding a meeting that the informant, Ryan Martin Logsdon had with the defendants prior to the transaction of May 8, 2007. During this meeting, Logsdon inspected a quantity of methamphetamine and the

defendants discussed quantities of methamphetamine as well as quality and purchase price of methamphetamine. Further, the Government intends to present evidence that defendant Larita Barnes used methamphetamine during this encounter.

**J.      Stipulations**

The Government has prepared trial stipulations and anticipates stipulated matters related to residency, chain of custody, lab analysis, and records custodians. Draft copies of the Government's stipulations have been provided for defense counsel and will be provided to the Court. Upon completion of those stipulations, the Court will be notified for its approval.

## CONCLUSION

This brief is offered to acquaint the Court with factual and legal issues which may arise at trial. The Government requests that the Court grant it leave to submit additional memoranda should other issues emerge later.

Respectfully submitted,

DAVID E. O'MEILIA
United States Attorney

/s/ Robert T. Raley
ROBERT T. RALEY, OBA # 013236
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, OK  74119
(918) 382-2700

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of April, 2008, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Julie O'Connell

Attorney for Larry Wayne Barnes, Sr.

Lance Hopkins
Attorney for Larita Annette Barnes

   /s/ Robert T. Raley         
Assistant United States Attorney

N:\BKelley\rtr\barnes, larry wayne, sr\TRIAL\trial brief.wpd/April 14, 2008 (1:04pm)