UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-CR-0135-CVE |
| ) | |
| LARRY WAYNE BARNES, SR., and ) | |
| LARITA ANNETTE BARNES, aka ) | |
| "Larita Annette Clark", ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Now before the Court are the following motions: the Government's Notice of Intent to Offer Evidence Pursuant to Rule 404(b) (Dkt. # 24); defendant Larita Annette Barnes' Motion in Limine as to Government's 404(b) Notice (Dkt. # 28); and Defendant Larry Wayne Barnes, Sr.'s Response to Government's 404(b) Notice, Related Motion for Severance and Brief in Support (Dkt. # 36).[1]

**I.**

According to the government, a confidential informant named Ryan Martin Logsdon ("Logsdon") obtained a cellular telephone number for Larita Annette Barnes ("Larita Barnes").[2] Logsdon called Larita Barnes to ask if he could purchase methamphetamine from her, but Larita Barnes explained that she could not sell methamphetamine unless her father, Larry Barnes was

---

[1] Defendant Larry Wayne Barnes, Sr. ("Larry Barnes") has also filed an errata (Dkt. # 37) correcting the name of the informant cited in the motion.

[2] The facts mentioned by the Court in this Opinion and Order are provided in the government's notice as the proposed testimony of Logsdon. However, the Court is not making any findings of fact or preventing any party from contesting Logsdon's testimony at trial. The Court recites the facts simply as background and Logsdon's reliability and veracity are matters left to the sound discretion of the jury.

included in the transaction. Logsdon subsequently called Larita Barnes to arrange a sale of methamphetamine, and they discussed the quantity, quality and price of methamphetamine for the proposed sale. Larita Barnes invited Logsdon to her and her father's home at 7116 E. Newton Street, Tulsa, Oklahoma to permit Logsdon to inspect the methamphetamine.

In late April 2007, Logsdon visited the Barnes' home to examine the quality of the methamphetamine. Logsdon knocked on the front door. Larita Barnes opened the door and escorted Logsdon to a back bedroom. Logsdon allegedly saw Larry Barnes lying on a couch with several small children and infants in the same room. Larita Barnes briefly left Logsdon in the bedroom alone while she talked to her father. A short time later, Larry Barnes and Larita Barnes entered the bedroom, and Larry Barnes set a plastic bag containing approximately one ounce of methamphetamine on Logsdon's lap. Logsdon opened the bag to smell the methamphetamine. According to the government, Logsdon "is aware of what quality methamphetamine smells like and what color it should be" although he does not use methamphetamine. Dkt. # 24, at 3. Larita Barnes broke off a piece of the methamphetamine and used a glass pipe to smoke it. After she finished smoking the methamphetamine, she commented that it was "good sh _ _." Logsdon and Larita Barnes discussed a purchase price for the methamphetamine and Logsdon left.

About three or four days later, Logsdon spoke to Tulsa Police Department Detective Jeff Henderson and Special Agent Brandon McFadden of the Bureau of Alcohol, Tobacco and Firearms and agreed to conduct a controlled buy of methamphetamine from Larita Barnes. Logsdon called Larita Barnes to arrange the purchase of three ounces of methamphetamine for $3,000. The transaction occurred on May 8, 2007. Defendants were subsequently indicted on one count of possession of methamphetamine with intent to distribute under 21 U.S.C. § 841(a)(1) and

(b)(1)(B)(viii) and one count of maintaining a location to distribute a controlled substance under 21 U.S.C. § 856. Both counts charge defendants with criminal activity on or about May 8, 2007.

## II.

The government has filed a notice of intent to offer Logsdon's testimony at trial and states that his testimony may include matters invoking Rule 404(b). The government argues that Logsdon's proposed testimony does not contain any evidence subject to Rule 404(b), because the acts he describes are intrinsic to defendants' alleged criminal conduct. In the alternative, the government argues that Logsdon's testimony will be offered as proof of motive, intent, preparation, plan, knowledge, and lack of mistake, and his testimony is admissible under Rule 404(b). Defendant Larita Barnes has filed a motion in limine seeking to exclude any testimony by Logsdon about events preceding May 8, 2007, because Logsdon's testimony concerns prior bad acts that are extrinsic to the charged offenses. Defendant further argues that Logsdon's testimony should be excluded under Fed. R. Evid. 403, because the probative value of the evidence is substantially outweighed by the risk of unfair prejudice this defendant.

>Fed. R. Evid. 404(b) provides, in pertinent part:
>
>Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In weighing the admissibility of evidence under Rule 404(b), the Court must consider four factors: (1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) whether the probative value of the evidence is substantially outweighed by its prejudicial effect, and (4) the court must give a limiting instruction if the defendant so requests. Huddleston v. United States, 485 U.S. 681, 691 (1988); United States v. Mares, 441 F.3d 1152, 1156 (10th Cir. 2006); United States v. Zamora,

222 F.3d 756, 762 (10th Cir. 2000). Rule 404(b) does not apply to evidence which is admitted as proof of the charged conduct; it applies only to evidence of acts extrinsic to the charged crime. United States v. Orr, 864 F.2d 1505, 1510 (10th Cir. 1988). "'An uncharged act [is not] extrinsic if it was part of the scheme for which a defendant is being prosecuted, or if it was 'inextricably intertwined' with the charged crime such that witness' testimony 'would have been confusing and incomplete without mention of the prior act.'" United States v. DeLuna, 10 F.3d 1529, 1532 (10th Cir. 1993) (quoting United States v. Record, 873 F.2d 1363, 1372 n.5 (10th Cir. 1989)).

Defendant argues, and the Court agrees, that the applicability of Rule 404(b) should be considered separately in reference to each count of the indictment. In Count One, defendants are charged with possession of methamphetamine with intent to distribute. To convict defendant for this charge, the government must prove that defendants knowingly or intentionally possessed methamphetamine with intent to distribute. 21 U.S.C. § 841(a)(1); United States v. Triana, 477 F.3d 1189, 1192 (10th Cir. 2007). Defendants are not simply charged with possessing methamphetamine. The government must go further and prove that defendants intended to sell methamphetamine. Evidence of an agreement to sell methamphetamine, particularly when that sale forms the basis for the charge in the indictment, proves or tends to prove an essential element of the government's case. Logsdon's conversations with Larita Barnes and his visit to the Barnes' house in late April 2007 are part of the same criminal episode, and these acts are intrinsic to the offense charged in Count One. Therefore, Rule 404(b) does not apply to Logsdon's proposed testimony to the extent it is offered to prove defendants' guilt for Count One.

To prove the charge alleged in Count Two of the indictment, maintaining a location for the purpose of distributing a controlled substance, the government must prove that each defendant "1)

knowingly 2) opened or maintained a place 3) for the purpose of manufacturing by repackaging, distributing, or using any controlled substance." United States v. Green, 175 F.3d 822, 832 (10th Cir. 1999) (quoting United States v. Williams, 923 F.2d 1397, 1403 (10th Cir. 1990)). The indictment in this case alleges that defendants maintained a location for the purpose of distributing methamphetamine. Defendant argues that an "alleged violation of Maintaining a Location in late April is in no way intertwined with an alleged separate violation of the same offense on May 8, 2007." Dkt. # 28, at 3. However, the use of the word "maintaining" implies an ongoing course of conduct and the government is permitted to establish the knowledge requirement for a § 856 charge by using evidence of conduct preceding the date in the indictment. See United States v. Onick, 889 F.2d 1425, 1431 (5th Cir. 1989). In fact, defendants could be convicted under § 856 without any knowledge that drugs were sold from the residence on May 8, 2007 as long as they previously made the residence available for drug manufacturing, distribution or use. United States v. McCullough, 457 F.3d 1150 (10th Cir. 2006) (defendant could be convicted under § 856 even though she did not live in the location for two months preceding an alleged drug sale because she owned the residence and knew the purpose for which it was being used). Logsdon's proposed testimony would show that defendants actively maintained a location for the purpose of distributing methamphetamine, and this is direct evidence of the charged offense. Therefore, the conduct described in Logsdon's proposed testimony is part of the same criminal episode as the conduct alleged in the indictment, and Rule 404(b) does not apply to Logsdon's testimony as to Count Two.

Even though the government intends to offer Logsdon's testimony to prove conduct intrinsic to the charged offenses, his testimony is still subject to exclusion under Fed. R. Evid. 401 and 403. United States v. Lambert, 995 F.2d 1106 (10th Cir. 1993) ("Such intrinsic 'other act' evidence,

although not excluded by 404(b), is still subject to the requirement of Fed. R. Evid. 403 that its probative value is not substantially outweighed by the danger of unfair prejudice."). There is no question that admitting Logsdon's proposed testimony is prejudicial in that it damages defendants' position at trial. However, in order for evidence to be inadmissible under Rule 403, the evidence's unfair prejudice must do more than "damage the [d]efendant's position at trial." United States v. Tan, 254 F.3d 1204, 1211-12 (10th Cir. 2001). "[R]elevant evidence of a crime which the government must introduce to prove its case is by its nature detrimental to a defendant who asserts that he is not guilty of the charged offense." Id. Evidence is unfairly prejudicial under Rule 403 if it "makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." Id. (quoting United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999)) (emphasis by the Tan court). "Exclusion of evidence under Rule 403 that is otherwise admissible under the other rules 'is an extraordinary remedy and should be used sparingly.'" Id. (quoting Rodriguez, 192 F.3d at 949).

Logsdon's testimony is highly relevant to the offenses charged in the indictment and the Court finds that it has significant probative value. Although admission of this evidence may prejudice defendants, it is not the type of "unfair prejudice" with which Rule 403 is concerned. Id. at 1211. The government intends to offer Logsdon's testimony to show that Logsdon and Larita Barnes discussed the sale of methamphetamine, that Logsdon visited the Barnes' residence to inspect the methamphetamine, and a sale was executed on May 8, 2007.[3] Should the jury credit

---

[3]   Defendant Larita Barnes argues that Logsdon's proposed testimony concerning the presence of children in the home should be excluded under Rule 403, because this evidence has little probative value and a high risk of unfair prejudice. At this time, it would be premature to exclude this evidence. The presence of children belonging to one of the defendants could be a relevant fact for establishing residency or ownership of the house, and this fact is relevant to the government's case in Count Two of the indictment. However, any party

6

Logsdon's testimony, this evidence is relevant to essential elements of Counts One and Two. Given that the evidence is highly probative and defendants have not identified any unfair prejudice from admission of Logsdon's testimony, this evidence should not be excluded under Rule 403.

### III.

Defendant Larry Barnes requests that the Court sever his trial from that of his co-defendant, Larita Barnes, because he claims that a joint trial will prejudice him due to the admission of incriminating statements made by his co-defendant. Based on the government's Rule 404(b) notice, defendant Larry Barnes asserts that Logsdon's proposed testimony may include statements incriminating to him that were allegedly made by Larita Barnes. He further claims that his co-defendant is unlikely to testify and he will not have an opportunity to cross-examine her concerning the statements. See Bruton v. United States, 391 U.S. 340 (1968) (Confrontation Clause of Sixth Amendment is violated by admission of a non-testifying co-defendant's statement that incriminates another defendant and the statement is admitted at a joint trial). He asserts that severance is necessary to avoid a violation of his Confrontation Clause rights.

Under Fed. R. Crim. P. 14(a), a district court may sever the trials of co-defendants joined in a single indictment if a joint trial would prejudice one or both of the defendants. However, "[j]oint trials of defendants who are indicted together are preferred because '[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" United States v. Hall, 473 F.3d 1295, 1301-02 (10th Cir. 2007) (quoting Zafiro v. United States, 506 U.S. 534, 539 (1993)). If defendants have been properly joined in the same indictment, "a district court

---

seeking to question Logsdon on this point should approach the bench to obtain a final ruling before questioning Logsdon about this issue.

should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. "[W]hen two or more people commit a criminal act and are later jointly indicted, they can usually expect to be tried together." United States v. Dirden, 38 F.3d 1131, 1141 (10th Cir. 1994) (quoting United States v. Dill, 693 F.2d 1012, 1014 (10th Cir. 1982)). A court's decision to order severance is discretionary, and a defendant bears a "heavy burden of showing real prejudice to his case." United States v. McConnell, 749 F.2d 1441, 1444 (10th Cir. 1984).

Defendant Larry Barnes has not carried his burden to show that he will be prejudiced by a joint trial with his co-defendant. The existence of Bruton statements does not automatically require a court to order separate trials for defendants charged in the same indictment. Spears v. Mullin, 343 F.3d 1215, 1230-31 (10th Cir. 2003); United States v. Hill, 901 F.2d 880, 883 (10th Cir. 1990). A defendant must first show that his co-defendant's statement "expressly implicates the defendant." Id. at 1230. If a co-defendant's statement expressly implicates the defendant, the statement may still be admitted if the statement is redacted "to eliminate not only the defendant's name but any reference to his or her existence" and the court gives the jury a proper limiting instruction immediately following admission of the statement. United States v. Chatman, 994 F.2d 1510, 1513 (10th Cir. 1993).

Defendant Larry Barnes assumes that his co-defendant will not testify and, thus, he will be denied the opportunity to cross-examine her about allegedly incriminating statements. The hypothetical risk that defendant Larry Barnes may be prejudiced based on his co-defendant's decision not to testify is insufficient to justify severance of defendants' trials. The Court has

reviewed Logsdon's proposed testimony and there is no doubt that his testimony may implicate Larry Barnes. Most of Logsdon's testimony that concerns Larry Barnes is based on Logsdon's own observations at the Barnes' residence rather than statements by Larita Barnes. This type of testimony does not implicate <u>Bruton</u>. Some of Logsdon's testimony may concern statements allegedly made by Larita Barnes that could incriminate Larry Barnes and this presents a <u>Bruton</u> problem. However, it is not such a severe <u>Bruton</u> problem that separate trials are required. This is not a situation where the Court may redact a written statement before trial to ensure compliance with <u>Bruton</u>, but the Court can exclude certain statements made by Larita Barnes to Logsdon to protect Larry Barnes' Sixth Amendment right to confront the witnesses against him. Before plaintiff calls Logsdon to testify, it should request a bench conference to preliminarily address defendant Larry Barnes' assertion that some of Logsdon's testimony may violate <u>Bruton</u>. If appropriate, the Court may limit Logsdon's testimony to avoid a <u>Bruton</u> violation and give an appropriate limiting instruction that any incriminating statements should be considered as evidence against Larita Barnes only. At this time, defendant Larry Barnes has not shown that he will be prejudiced by a joint trial, and his motion to sever is denied.

**IT IS THEREFORE ORDERED** that defendant Larita Annette Barnes' Motion in Limine as to Government's 404(b) Notice (Dkt. # 28) is **denied**, and defendant Larry Barnes' motion to sever (Dkt. # 36) is **denied**.

**IT IS FURTHER ORDERED** that Logsdon's testimony is admissible as intrinsic evidence of the charged offenses and his testimony should not be excluded under Fed. R. Eved. 404(b).

**DATED** this 15th day of April, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT